HOMER D. KIRK, ADMINISTRATOR, ET AL., APPELLANTS, V. JOHN TACKETT ET AL., APPELLEES.

279 N. W. 468

FILED MAY 6, 1938. No. 30262.

*F. A. Hebenstreit,* for appellants.

*A. E. Henry* and *Jean B. Cain, contra.*

Heard before GOSS, C. J., DAY, PAINE, CARTER and MESSMORE, JJ., and LIGHTNER and SPEAR, District Judges.

SPEAR, District Judge.

Action in equity to set aside a deed from Grant S. Ocamb to Celina Tackett, conveying a house and lot and 80 acres of land. Plaintiffs, appellants here, allege that the deed is void because of undue influence, the mental capacity of Ocamb, and because there was no consideration. The district court found for the defendants, appellees here.

Grant S. Ocamb, now deceased, was for years the owner

of a small grocery store in Rulo, Nebraska, where he accumulated a comparatively small amount of property, although reputed to be a good business man. He had always been a bachelor, and built a house in which he lived with his father and mother until they died. After his mother and father had passed away, John Tackett and his wife, Celina, defendants, moved into Ocamb's house and kept house for him. They remained there from perhaps 1930 until 1933, when they moved out and established a boarding house. Mrs. Tackett continued to go to Ocamb's house occasionally to do little things for him. In 1934 Ocamb asked them to return, and they did return under a written contract, by the terms of which the Tacketts were to move into Ocamb's house, pay all the grocery and light bills and take care of Mr. Ocamb. No rent was to be paid by the Tacketts. Mr. Tackett at this time had worked a number of years for Mr. Ocamb in his store and the agreement also provided that Tackett and his wife should take care of the store. For all of this the Tacketts were to receive $60 a month. This contract is not in evidence, but it apparently was to continue for three years.

It appears that, beginning in 1934, Ocamb began to decline somewhat both physically and mentally. He apparently had difficulty in making change in the store in some instances, and had difficulty in ordering his meals at the restaurant. In 1935 he had a stroke and from that time his condition became worse. In February, 1936, he owned the house in which he lived, one or two very small properties in Rulo, and a little farm of less than 80 acres, which was worth perhaps $4,000, with an encumbrance of $2,000 plus interest and some taxes. His heirs at that time were Chester Ocamb, who had lived on the eighty, George Ocamb, who lived near North Platte, Harry Ocamb, who lived in Kansas City, the children of a deceased brother, Howard Ocamb, and the children of a deceased sister, Emma Ward. None of these relatives except Chester lived in Rulo or vicinity. On October 29, 1936, he deeded the farm and the house in which he lived to Mrs. Tackett. At this time

Ocamb was 66 years of age, Mr. Tackett was 68 and Mrs. Tackett 55. The deed contained this recital:

"This conveyance is made subject to a charge on all of the above described real estate that the grantee herein shall during the remainder of the natural life of the grantor, so far as the strength and physical ability of the grantee herein permits and the needs of the grantor herein require, devote her time and strength to caring for and nursing the grantor herein."

A few weeks later, about January 11, 1937, Grant S. Ocamb died.

There is a great deal of testimony as to the mental capacity of the deceased, but probably his condition is best stated by Dr. William G. Shepherd, Ocamb's physician, who treated him from the time of his stroke in January, 1936, until his death a year later, and who was called as a witness for the defendants. He says that his mental condition varied during that time; that there were days when he did not recognize people, his intimate friends, and there were days when he apparently knew everything that was going on. Dr. Shepherd says that on October 31, 1936, he went there with another man to get Ocamb's vote for the election of November 3. Dr. Shepherd testifies that Ocamb voted for all the principal candidates; that he knew them by name and he knew who he wanted to vote for; that after he got down to a certain line he did not know one of the candidates from the other, which situation, we think, is not unusual in competent voters. Dr. Shepherd says at that time he was competent to transact business. On cross-examination Dr. Shepherd stated that on his better days Ocamb was not more than half as intelligent as he was before his illness, Dr. Shepherd having known him before he became ill. It thus appears that Ocamb at times was rational and that at times he was not rational. Just how much the stroke had impaired his business judgment, even when he was rational, is impossible definitely to say, so we must be guided largely by the other facts.

The Tacketts had been intimate with Ocamb for many

years. After his stroke in 1936 he gave a power of attorney to Tackett to transact his banking business and to conduct his merchandise business. He told several people that he was going to leave his property to Mrs. Tackett because she was good to him and also mentioned it after he had made the deed. On the other hand, he had quarreled with his brother George 35 years ago, and the feeling was perhaps none too cordial at the time of his last illness. After his first stroke he also quarreled with his brother Chester, who lived on the eighty. Chester had moved to California with a large family, where he had left them, and had been back farming the eighty for several years. It seems that Chester wanted to move his family from California into Grant S. Ocamb's house and Grant did not want that, so they disagreed. Harry Ocamb lived in Kansas City and one brother and one sister were dead. It therefore seems that the Tacketts had the most legitimate claim upon the affections of Ocamb, and that it was perfectly natural for him to deed what little property he had to Mrs. Tackett, upon the condition that she care for him during his life. There is not any affirmative evidence of undue influence on the part of the Tacketts, although they knew that Ocamb would die soon and also knew that his mental condition was not the best. Tackett at one time told some one that Ocamb minded mama (Mrs. Tackett) like a baby and there is some evidence that the Tacketts did not want George Ocamb to visit his brother, but there is also evidence that the brothers were not very friendly.

The notary says that one of his children came downtown and told him that he was wanted at Grant S. Ocamb's, and to bring his seal. When he arrived at Ocamb's house the deed was on the table and present were Grant S. Ocamb, Mr. and Mrs. Tackett, Cecil McMullen, and the notary, Kermoade. The deed was ready to be signed. It appears that Tackett's son had gone to Mr. Henry, a lawyer at Pawnee City, and had the deed prepared. Mrs. Tackett says that Ocamb was talking about it and he told her that he would like to have the deed made out to her; that he told

her that he would be glad to have it done; that he wanted it done; that he said to go ahead and have it done and he would sign it and have it fixed up. Then she had the son have the deed made at Pawnee City and sent to her. Kermoade says that when he got there Ocamb got up and walked across the room and sat down. Kermoade then picked up the deed and asked him if he was familiar with the contents of the document and Ocamb said that he was. Ocamb then asked Kermoade where to sign and Kermoade showed him where to sign. He says that Mr. and Mrs. Tackett did not enter into the conversation at any time except that Grant S. Ocamb said, "I am going to give everything I own away to Mrs. Tackett," and Mrs. Tackett said, "You aren't giving it away, not as long as you need it." It will be noted that the notary had Cecil McMullen put his name on the deed also as an additional witness. The plaintiffs claim that this shows that Kermoade had suspicions of Ocamb's mental capacity. Kermoade said on cross-examination that he expected some fight to come up over the deed, but that he did not know that there was anything unfair about the transfer. Kermoade says that Ocamb was competent to make the deed. Cecil McMullen, the other witness, says that Mr. and Mrs. Tackett were not in the room when the deed was signed. He apparently had been in the room with Ocamb about an hour before the notary came. He says Ocamb was competent.

Clara Murphy, who had done work of various kinds for Grant S. Ocamb for 20 years, who nursed him some in his last year, shaved him twice a week, and who appears to have been in Ocamb's confidence, testified that he told her on several occasions that he intended to leave the property to Mrs. Tackett for his care. After he had made the deed he told her that he had concluded that he could not recover; that he would have to have care for the rest of his life, and for that reason they had made an agreement; and that he left his property to Mrs. Tackett for his keep the rest of his life, whether he lived ten days or ten years.

In view of his family situation and his meager estate,

the above explanation seems to this court to be a just and common-sense line of reasoning, and one that evidences ordinary intelligence. We also think that there was nothing so unjust or so unusual in such an arrangement as to impel this court to say that Grant S. Ocamb was incompetent, or that the deed was the result of undue influence exerted upon a weak mind. In addition to these things, we are impressed with the fact that the district judge had the opportunity to see the witnesses, observe their demeanor, and in many ways had a better opportunity to weigh the evidence than has this court.

Plaintiffs contend that the rule announced in *Chamberlain v. Frank*, 103 Neb. 442, 172 N. W. 354, places the burden of proof upon defendants to show that the transaction was fair and just. Although the situation in that case was far more extreme than in the case at bar, we have in the instant case applied this yardstick and find that the defendants have successfully carried the burden.

AFFIRMED.